Jeffrey A. Silvestri (NSBN 5779)
Craig A. Newby (NSBN 8591)
Amanda M. Perach (NSBN 12399)
McDONALD WILSON LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV  89102
Telephone:       702.873.4100
Facsimile:        702.873.9966
Email:              jsilvestri@mcdonaldcarano.com
                       cnewby@mcdonaldcarano.com
                       aperach@mcdonaldcarano.com


John M. Desmarais (*pro hac vice* to be submitted)
Justin P.D. Wilcox (*pro hac vice* to be submitted)
Jonas R. McDavit (*pro hac vice* to be submitted)
Kathryn Bi (*pro hac vice* to be submitted)
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel:  (212) 351-3400
Email: jdesmarais@desmaraisllp.com
          jwilcox@desmaraisllp.com
          jmcdavit@desmaraisllp.com
          kbi@desmariasllp.com

*Attorneys for IGT*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IGT, a Nevada corporation<br><br>                       Plaintiff,<br><br>         v.<br><br>SCRAPPY ELEGANT GAMING, LLC, a revoked Nevada limited liability company; DARRYL ROSENBLATT, a Nevada resident; JAMIE LEIGH KLINGLER, a Nevada resident; and DOES 1-10 inclusive.<br><br>                       Defendants. | CASE NO. _____<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff IGT brings this complaint for declaratory judgment of patent non-infringement and invalidity, unfair competition, and tortious interference against Scrappy Elegant Gaming LLC, Darryl Rosenblatt, and Jamie Leigh Klingler, and alleges as follows:

## NATURE OF ACTION

1. This is an action for declaratory judgment that Plaintiff does not infringe U.S. Patent No. 9,582,970[1] (the "'970 patent") and that '970 patent is invalid, as well as for judgment that Defendants' false and misleading statements and actions regarding the '970 patent constitute unfair competition and tortious interference with contractual relations and prospective economic advantage. This action arises under the patent laws of the United States, including 35 U.S.C. § 271 and §§ 281-285; the Lanham Act, including 15 U.S.C. § 1125; the Declaratory Judgment Act, including 28 U.S.C. § 2201; and the laws of the state of Nevada.

## PARTIES

2. Plaintiff IGT is a corporation organized and existing under the laws of the state of Nevada, with a principal place of business located at 6355 South Buffalo Drive, Las Vegas, Nevada 89113. IGT is a world leader in gaming entertainment and a leading supplier of casino and lottery gaming machines, commonly known as "slot machines."

3. Scrappy Elegant Gaming LLC ("Scrappy") is a limited liability company organized under the laws of the state of Nevada. Scrappy's business license expired on September 30, 2015 and was not renewed. Its status is "Revoked" according to the Nevada Department of State.

4. Jamie Leigh Klingler is the alleged Chief Executive Officer ("CEO") of Scrappy, a Member of Scrappy, and an interim assignee of the '970 patent.

5. Darryl Rosenblatt (a/k/a "Devon Cage") is the named inventor of the '970 patent, husband of Klingler, and purports to be Scrappy's "Director of Engineering." Rosenblatt has been convicted of multiple felonies in Nevada including burglary, theft, and forgery.

6. The true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants sued in this complaint as DOES 1-10 (collectively, the "Doe Defendants"), are presently unknown to Plaintiff, who therefore sues them by fictitious names. Plaintiff will amend the complaint to allege their true names and capacities when ascertained.

---

[1] Attached here as Exhibit 1.

Plaintiff is informed and believes, and therefore alleges, that all defendants, which include the Doe Defendants, were or are, in some way or manner, responsible for and liable to Plaintiff for the events, happenings, and damages alleged in this complaint.

## JURISDICTION AND VENUE

7. This is an action for injunctive relief, monetary damages, interest, and attorneys' fees under the patent laws of the United States, for declaratory judgment under 28 U.S.C. § 2201 of non-infringement and invalidity under 35 U.S.C. §271, unfair competition under 15 U.S.C. § 1125(a), and tortious interference with prospective economic advantage under the laws of the state of Nevada, subject to supplemental jurisdiction under 28 U.S.C. § 1367(a).

8. This Court has personal jurisdiction over the defendants. Scrappy purports to be a limited liability company organized under the laws of the state of Nevada with an operating address at 3800 Howard Hughes Pkwy Ste 1000, Las Vegas, Nevada 89169-5958. Scrappy's website domain (www.scrappyelegantgaming.com) is registered to "Cage Magic Associates" at 2045 Grouse Street, Las Vegas, Nevada 89134. Klingler represents herself as the Scrappy Chief Executive Officer and is the listed member of Scrappy. Rosenblatt represents himself as the Scrappy Director of Engineering and resided at 716 Red Bark Lane, Henderson, Nevada as of July 2017.

9. Venue is proper in the District of Nevada pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## FACTUAL BACKGROUND

### IGT and G2E 2017

10. IGT is the world's leading end-to-end gaming company. It is listed on the New York Stock Exchange under the trading symbol "IGT." IGT attracts the industry's top talent, with more than 12,000 employees across the globe.

11. IGT is a global leader in gaming. IGT has a well-established presence in Nevada and relationships with governments and regulators in more than 100 countries around the world. With the industry's largest and most comprehensive solutions portfolio, IGT enables players to experience their favorite games across all channels and regulated segments.

12. IGT's customers span the entire gaming industry, including executives, corporate management, leaders, and buyers from all departments within casinos or other gaming establishments.

13. The most important annual trade show for the gaming industry is the Global Gaming Exposition ("G2E"). G2E represents itself as "the show in the gaming industry" that "showcases the technologies, services, and products of exhibitors and provides an atmosphere to buy/sell, network, and learn." The 2017 G2E conference will occur during the week of October 2, 2017 at the Sands Expo & Convention Center in Las Vegas, Nevada. IGT has exhibited products at G2E for more than a decade.

14. G2E is the most important trade show for IGT each calendar year for showcasing products and entering business relationships with prospective customers. IGT is a registered exhibitor at G2E 2017. IGT's executive management team and many employees will be in attendance. IGT will feature a vast portfolio of games, hardware, systems and solutions across multiple product segments and platforms at G2E. IGT expects that over 1200 current and potential customers will attend the conference and will visit IGT's presentation booth. IGT will showcase the breadth and depth of its games portfolio by introducing new game content for eight of its cutting-edge cabinets. IGT will also demonstrate new gaming cabinets at G2E 2017, including video cabinets featuring CrystalCurve ULTRA technology.

**Defendants' Infringement Allegations**

15. Defendants have notified IGT that they believe IGT infringes U.S. Patent No. 9,582,970 (the "'970 patent"). Knowing the importance of G2E 2017 to IGT, Defendants have expressed their intent to disrupt IGT's G2E presentations, including alleging, without evidence, that certain IGT products which use CrystalCurve ULTRA technology infringe the '970 patent. Hoping that such a disruption will cause irreparable harm to IGT, Defendants seek to extract payment from IGT. But IGT does not infringe the '970 patent, and the '970 patent is invalid.

16. Defendants initially contacted IGT via an intermediary in late July 2017. The intermediary, Roger Hawkins of Hawkins Holdings, emailed a copy of the '970 Patent to executives in IGT's product marketing and product development departments, asking that they:

> [L]ook at my clients [sic] issued patents and your TMZ and Ellen games that you offer, you will see that we have some protection which may enhance your own games. I think there may be some 'overlap' of what you are offering and what we have issued patents on, which we would like to open dialogue about.

17. On August 11, 2017, IGT responded and declined Defendants' offer to collaborate.

18. On August 22, 2017, IGT received a letter from Attorney Richard Newman, who purported to represent defendants Scrappy and Klingler. After describing at a high level the subject matter of the '970 patent, the letter asserted that IGT's "electronic gaming machines that provide a feature for enabling players to replace a game symbol with a picture taken of the player (e.g., "Ellen" and "TMZ"-branded slot machines) . . . are likely within the scope of the multiple claims of the '970 patent." The letter further stated that if IGT "disregard[ed] the harm caused by continued use" of the '970 patent, Scrappy and Klingler would have "no realistic commercial opportunities available to consider for the '970 Patent other than legal options to seek redress for damages and protect its valuable rights."

19. On August 29, 2017, IGT responded to Mr. Newman, offering to meet with him to discuss Defendants' allegations of infringement. IGT asked that Mr. Newman be prepared to articulate the basis of Defendants' infringement accusations regarding the ELLEN™ and "TMZ" machines.

20. On September 12, 2017, IGT's attorneys Stephen Calogero and Kevin Remus met with Newman and Kathleen McLaughlin, who purported to be Scrappy's Chief Operating Officer. At the meeting, Newman and McLaughlin refused to explain the basis of Scrappy's infringement claim and stated that it was IGT's responsibility to prove that IGT's products did not infringe the '970 patent. Newman and McLaughlin further stated that they were interested in meeting with IGT's business staff to see whether Scrappy could work with IGT to collaborate on a product that embodied the '970 patent. Newman stated that if such a deal could not be arranged, then Scrappy and Klingler would have to go down "other avenues," stating, by way of

1  example, that Scrappy "could sell the patent to a company like Apple and then [IGT] could deal
2  with Apple."

3      21.    IGT's attorneys explained to Scrappy that in order to pursue business discussions
4  with IGT, Scrappy must withdraw its infringement allegations. Newman asked IGT's attorneys
5  to send language that could be included in a potential retraction letter from Scrappy to IGT.

6      22.    On Friday, September 22, 2017, Mr. Calogero sent the proposed language to
7  Newman. Newman responded the same day and stated that he would relay that information to
8  Defendants.

### Defendants' Threats against IGT

10      23.    Over the next several days, Defendants, individually and collectively, threatened
11  IGT and its employees, including by stating its plans to disrupt IGT's presentations to customers
12  at G2E 2017.

13      24.    In a press release dated September 24, 2017, Defendants stated that "IGT's
14  products violate the ['970] patent across a variety of games including the ELLEN™ and TMZ™
15  games featured on the CrystalCurve ULTRA gaming platform." The press release quotes
16  Defendant Klingler as stating that Scrappy is "absolutely committed to protecting the patent we
17  have been issued." The release further advised of a "huge distraction" that could result from
18  infringement threats at a G2E event.

19      25.    On Monday, September 25, 2017, IGT attorney Stephen Calogero, received the
20  following text message from an anonymous telephone number concerning IGT and Defendant
21  Scrappy (or "SEG"):



Calogero continued to receive additional anonymous text messages throughout the day, each of which related to defendants and/or their infringement allegations against IGT.

26. That same day, Rosenblatt issued a press release that directly threatened IGT's G2E presentations. The press release stated that Scrappy "put IGT on notice that they believe that the ELLEN™ and TMZ™ games featured on their Crystal Curve™ ULTRA gaming machine directly infringe on their '970 patent." The release stated that Klingler "is peeved, and plan's [*sic*] on making her company's presence known at G2E 2017." The release also stated that Scrappy planned to send surrogates to disrupt the G2E 2017 IGT booth. The press release quotes Klingler:

> [Scrappy] ha[s] four huge "fans" of IGT that are going to let us play our videos and distribute our stuff in their booths. We are handing out little Jump drives with our videos including "Jamie's Story". It cost me nothing to register these people. I registered the Ellen lookalike under redacted, for goodness sake.



27. Defendants have made threats against IGT and its customers. For example, defendants published a video called "Infringement Teaser 12." The video identifies Defendant Scrappy; contends that IGT's ELLEN™ and TMZ™ games infringe the '970 patent; contends that Ellen DeGeneres called IGT about the '970 patent; declares that, "little does IGT know what [Scrappy] has planned for [IGT] at G2E . . ."; quotes Klingler for the statement that "[w]e are about to show [IGT] what messy looks like"; threatens to "crash[]" IGT's booth at G2E unless IGT pays Klingler; threatens "enhanced damages"; and threatens IGT's customers with infringement lawsuits, stating that "legal action will be taken by [Scrappy] against any operator found to be utilizing the Crystal Curve ULTRA cabinet manufactured by IGT."[2]

28. Defendants published two other videos: "TMZ"[3] and "SEG ELLEN 1."[4] Each video also contends that Scrappy owns the '970 patent, the TMZ™ and ELLEN™ games infringe the '970 patent, and that IGT "ripped off" Klingler or "ignored [Scrappy's] rights."

29. Defendants Klingler and Rosenblatt have registered to attend G2E 2017.

## COUNT I

**(Non-Infringement of U.S. Patent No. 9,582,970)**

30. IGT realleges and incorporates by reference the allegations set forth in all preceding paragraphs.

31. Defendant Scrappy contends that it owns the '970 patent. Klingler and Rosenblatt are members and/or officers of Scrappy. Klingler states that she is the Chief Executive Officer of Scrappy. Rosenblatt states that he is the Scrappy "Director of Engineering."

32. Defendants have accused IGT of infringing the '970 patent products that feature Crystal Curve™ ULTRA gaming machine (the "Accused Products").

---

[2] *See* Exhibit 2, available online at https://www.youtube.com/watch?v=hdjXN1K7FY8 (accessed Sept. 28, 2017).
[3] *See* Exhibit 3, available online at https://www.youtube.com/watch?v=wFKs5S9Yxqg&feature=youtu.be (accessed Sept. 28, 2017).
[4] *See* Exhibit 4, available online at https://www.youtube.com/watch?v=UlPCc3h0Xy4 (accessed Sept. 28, 2017).

33. Defendants have made and continue to make misleading and false characterizations about the Accused Products.

34. IGT denies that any of its products, including the Accused Products, infringe the '970 patent. The Accused Products do not infringe any claim of the '970 patent at least because no Accused Product contains a "player provided game element" as claimed in the '970 patent.

35. Absent a declaration that the Accused Products do not infringe the '970 patent, Defendants will continue to wrongfully assert the '970 patent against IGT and/or its customers and thereby cause it irreparable harm and injury.

36. A substantial, immediate, and real controversy therefore exists between IGT and Defendants as to whether the Accused Products infringe the '970 patent.

37. Based on the foregoing, IGT hereby requests a declaration from the Court that at least the Accused Products (and/or their use by IGT and its customers) do not infringe any claim of the '970 patent.

## COUNT II

### (Invalidity of U.S. Patent No. 9,582,970)

38. IGT realleges and incorporates by reference the allegations set forth in all preceding paragraphs.

39. Defendants claim to own the '970 patent.

40. The claims of the '970 patent are invalid under the provisions of Title 35, United States Code, including but not limited to, §§ 102, 103 and/or 112, at least in view of U.S. Patent 7,048,630 to Berg et al ("Berg"), attached as Exhibit 5.

41. Absent a declaration that the claims of the '970 patent are invalid, Defendants will continue to wrongfully assert the '970 patent against IGT and/or its customers and thereby cause it irreparable harm and injury.

42. A substantial, immediate, and real controversy therefore exists between IGT and defendants as to whether the claims of the '970 patent are valid.

43. Based on the foregoing, IGT hereby requests a declaration from the Court that the claims of the '970 patent are invalid in view of Berg.

## COUNT III

### (Unfair Competition / False Advertising)

44. IGT realleges and incorporates by reference the allegations set forth in all preceding paragraphs.

45. Defendants have made public statements (see Exhibits 2-4) concerning the Accused Products.

46. Those statements contain false and misleading statements of fact including, but not limited to: (1) that the Accused Products infringe the '970 patent, (2) that the games' celebrity namesakes (i.e. Ellen DeGeneres, Harvey Levin) somehow endorse or agree with Scrappy's allegations, (3) that defendants explained to IGT why the Accused Products infringe the '970 patent, and (4) that IGT did not meet with Scrappy in good faith.

47. Those statements were promulgated and used in a commercial setting, including in Defendant-produced YouTube videos and Defendant-issued press releases. Those materials are freely available on the Internet throughout the United States.

48. Such statements are intended to deceive and may deceive others regarding whether the Accused Products infringe the '970 patent or otherwise unlawfully use Defendants' alleged intellectual property and/or whether IGT's celebrity sponsors endorse any of Defendants' infringement accusations.

49. Defendants' statements threaten customers, users, and purchasers of the Accused Products with legal action.

50. Defendants' statements are likely to cause and have already caused commercial harm to IGT and/or its customers, at least because of defendants' false and misleading statements.

## COUNT IV

### (Tortious Interference with Prospective Economic Advantage)

51. IGT realleges and incorporates by reference the allegations set forth in all preceding paragraphs.

52. IGT has prospective contractual relations with the various entities that attend the G2E conference.

53. Defendants are aware that IGT is presenting at G2E 2017, and will show games that utilize the CrystalCurve ULTRA cabinet. Defendants are further aware that presenting entities like IGT showcase products at G2E to the gaming industry.

54. Defendants' statements and actions concerning G2E, the Accused Products, IGT, and the alleged infringement of the '970 patent were and are intended to interfere with IGT's ability to sell to prospective customers.

55. Defendants intended to harm IGT by their statements and actions.

56. Because of Defendants' announced intent to disrupt IGT's presentations at G2E, IGT has suffered actual harm. Further, without an order enjoining Defendants from attending G2E or continuing issue false and misleading statements about IGT, its employees, and the Accused Products, IGT will suffer additional harm.

## COUNT V

### (Tortious Interference with Contractual Relations)

57. IGT realleges and incorporates by reference the allegations set forth in all preceding paragraphs.

58. IGT has contractual relations with the various entities that attend the G2E conference.

59. Defendants are aware that IGT is presenting at G2E 2017, including showing games that utilize the CrystalCurve ULTRA cabinet. Defendants are further aware that presenting entities like IGT showcase products at G2E to the gaming industry.

60. Defendants' statements and actions concerning G2E, the Accused Products, IGT, and the alleged infringement of the '970 patent were and are intended to interfere with IGT's ability to maintain contracts with existing customers.

61. Defendants' statements and actions would actually disrupt some of IGT's contracts with clients.

62. Because of defendants' announced intent to disrupt IGT's presentations at G2E, IGT has suffered actual harm. Further, without an order enjoining Defendants from attending G2E or from issuing additional false and misleading statements about IGT, its employees, and the Accused Products, IGT will suffer additional harm.

## **PRAYER FOR RELIEF**

IGT respectfully prays for the following relief:

1. A declaration that the Accused Products do not infringe the '970 patent;

2. A declaration that the '970 patent is invalid;

3. Equitable relief sufficient to eliminate the effects of the Defendants' unlawful and unfair business acts, including, but not limited to a: (1) an injunction requiring Defendants to cease and desist from making unsupported infringement claims against IGT, (2) an injunction requiring Defendants to cease and desist from making false and misleading statements about IGT, IGT employees, and the Accused Products, (3) an injunction requiring Defendants to cease and desist from harassing IGT and/or its employees, (4) an injunction requiring Defendants to cease and desist from lodging unsupported infringement allegations, which cast a cloud over the business of IGT, and (5) an injunction requiring Defendants to cease and desist from engaging in any other activities that disparage IGT or tarnish its reputation;

4. A temporary restraining order enjoining defendants from attending G2E 2017 or any IGT event at or associated with G2E 2017;

5. A temporary restraining order enjoining Defendants barring them from coming within 100 yards of IGT's booth at G2E 2017 or IGT's G2E 2017 Wednesday-night customer party at the Omnia Nightclub, Caesars Palace;

6. A temporary restraining order enjoining Defendants from having any contact with any IGT employee for the duration of G2E 2017;

7. A temporary restraining order enjoining Defendants from displaying or disseminating information or opinions about IGT, its employees, or its alleged infringement for the duration of the G2E conference;

8. An order requiring Defendants to remove from the web their two prior press releases and three YouTube videos regarding IGT and its alleged infringement of the '970 patent;

9. Money damages sufficient to compensate IGT for the harm caused by Defendants' false and misleading statements;

10. Money damages sufficient to compensate IGT for the harm caused by the loss of current contractual relations and prospective economic advantage because of Defendants' actions;

11. An award of Plaintiff's reasonable attorneys' fees and costs, pursuant to applicable law; and

12. Such other and further relief as deemed appropriate by this Court.

Dated:  September 29, 2017   Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　 /s/ Craig A. Newby
Jeffrey A. Silvestri (NSBN 5779)
Craig A. Newby (NSBN 8591)
Amanda M. Perach (NSBN 12399)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV  89102
Telephone:   702.873.4100
Facsimile:    702.873.9966
Email:         jsilvestri@mcdonaldcarano.com
                   cnewby@mcdonaldcarano.com
                   aperach@mcdonaldcarano.com

John M. Desmarais (*pro hac vice* to be submitted)
Justin P.D. Wilcox (*pro hac vice* to be submitted)
Jonas R. McDavit (*pro hac vice* to be submitted)
Kathryn Bi (*pro hac vice* to be submitted)
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel:  (212) 351-3400
Email: jdesmarais@desmaraisllp.com
           jwilcox@desmaraisllp.com
           jmcdavit@desmaraisllp.com
           kbi@desmaraisllp.com

*Attorneys for Plaintiff IGT*

4819-4447-9825, v. 1